[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Town of North Haven in the first of these consolidated cases and the plaintiffs Protect Hamden/North Haven From Excessive Traffic And Pollution, Inc., Spring Glen Parent Teacher Association, Spring Glen Civic Association, Inc. and nineteen individual plaintiffs (hereinafter sometimes collectively referred to as "Protect") in the second case have taken these appeals from the decision of the defendant Planning Zoning Commission of the Town of Hamden (hereinafter the "Commission") to amend its zoning regulations which would permit a regional shopping mall of 784,000 square feet.[1]
In July of 1988 the defendant attorney Bernard A. Pellegrino, on behalf of the defendants Homart Development Company and Fusco/Gottlieb Associates (the latter two hereinafter collectively referred to as "Homart") prepared and presented to the Commission six proposed amendments to the zoning regulations which were designated as application No. 88-755 (hereinafter referred to as the "Application"). The Application included the five amendments to the zoning regulations which were adopted and are the subject matter of this appeal (hereinafter referred to as the "Amendments").[2] These Amendments to the regulations provide for the following: an increase in the maximum gross floor area of a shopping center from 250,000 square feet to 784,000 square feet[3]; the exclusion of enclosed walkways that are within the building from the definition of gross floor area[4]; the aggregation of lots within a shopping center for some area, yard and frontage coverage requirements[5]: the fulfilling of front landscaping requirements by moving it to other locations on the site[6]; and the exclusion of parking space within and below a structure when computing the required landscaped area or number of trees.[7]
The Application was first referred to the planning section of the Commission and at a meeting held on October 20, 1988 that section recommended approval of all of the proposed amendments. Thereafter the Commission held public hearings on November 10, 1988, December 1, 1988 and December 8, 1988, and approved the Amendments (five of the six proposed amendments) by a vote of three to two.
Although both the consolidated appeals taken by North Haven and Protect concern the same subject matter — that is, the five amendments to the zoning regulations adopted by the Commission in order to provide for a regional shopping mall — they involve CT Page 1475 distinct issues. Nevertheless, some of the facts either found by this court or set forth in the record are applicable to both appeals.
North Haven's Appeal
The plaintiff Town of North Haven appealed from the decision amending the Hamden zoning regulations on the grounds that the Commission failed to comply with the notice requirement of 8-3h
and 8-26f of the General Statutes (Public Acts 1987, No. 87-307, 1 and 3) (both hereinafter sometimes referred to as the "Municipal Notification Statutes"). The Municipal Notification Statutes are identical except that 8-3h applies to zoning commissions and 8-26f applies to planning commissions. The statutes provide that the clerks of the planning and zoning commissions —
 shall notify the clerk of any adjoining municipality of the pendency of any application, petition, request or plan concerning any project on any site in which: (1) Any portion of the property affected by a decision of such zoning [or planning] commission is within five hundred feet of the boundary of the adjoining municipality: (2) a significant portion of the traffic to the completed project on the site will use streets within the adjoining municipality to enter or exit the site; (3) a significant portion of the sewer or water drainage from the project on the site will flow through and significantly impact the drainage or sewerage system within the adjoining municipality; or (4) water run-off from the improved site will impact streets or other municipal or private property within the adjoining municipality. Such notice shall be made by registered mail and shall be mailed within seven days of the date of receipt of the application, petition, request or plan. No hearing may be conducted on any application, petition, request or plan unless the adjoining municipality has received the notice required under this section. Such adjoining municipality may, through a representative, appear and be heard at any hearing on any such application, petition, request or plan.
The purpose of these statutes, as clearly stated in the legislative history, is to require that an adjoining municipality be given notice and the right to be heard when a municipality contemplates action concerning any project on a site which would affect it under one or more of the four criteria set forth in the CT Page 1476 statutes. It does not grant the adjoining town veto power over the project, but it does require planning and zoning commissions to consider the impact that their action will have beyond the borders of their towns. See remarks of Representative Richard Blumenthal, co-chairperson of the Joint Standing Committee on Planning 
Development on the floor of the House of Representatives: 30 H.R. Proc. Pt. 16, 1987 Sess., p. 6026: and before the committee. Conn. Joint Standing Committee Hearings, Planning and Development, Pt. 3, 1987 Sess., p. 688. Statements made on the floor of the house or senate; Manchester Sand Gravel Co. v. South Windsor, 203 Conn. 267,276 (1987); and testimony before the legislative committees; State v. Magnano, 204 Conn. 259, 274 n. 8 (1987); may be judicially noticed and are strong, although not controlling, indications of legislative intent.
North Haven claims that under the provisions of the Municipal Notification Statutes it should have been given notice of the Application because the Amendments concern a project on a site in which a significant portion of the traffic to the completed project will use streets within North Haven, that the Commission, as it admits, failed to give such notice and that as the result of such failure the Amendments are invalid. The court agrees with the plaintiff North Haven and holds that its appeal must be sustained.
(a) Jurisdiction of the Court
Proof of aggrievement by the plaintiff is a prerequisite to establishing that the court has subject matter jurisdiction. General Statutes 8-8 (a) and 8-9: Bakelaar v. West Haven,193 Conn. 59, 65 (1984): Hughes v. Town Planning and Zoning Commission (North Haven), 156 Conn. 505, 508 (1988). Plaintiff-appellants may satisfy this jurisdictional requirement by proving that they are "statutorily" or "classically" aggrieved. Pierce v. Zoning Board of Appeals (Harwinton), 7 Conn. App. 632, 636 (1986). A party is statutorily aggrieved if the statute grants the person or entity in the position of the party the right to appeal. For example, General Statutes 8-8 (a) provides that "any person owning land which abuts or is within a radius of one hundred feet of any portion of the land involved in any decision . . . may . . . take an appeal to the superior court. . . ." The plaintiff North Haven does not claim it is statutorily aggrieved.
A party is classically aggrieved if the following twofold test has been met. "First, the party claiming aggrievement must demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must establish that this specific, personal and legal interest has been specially and injuriously affected by the decision." Hall v. Planning Commission CT Page 1477 (Ledyard), 181 Conn. 442, 444 (1980).
In the present case, the failure to give North Haven notice as required by the Municipal Notification Statutes satisfies both prongs of the test for classical aggrievement. North Haven, by establishing in this case the elements required to activate the Municipal Notification Statutes has, as a result of this right granted by the legislature, a "specific, personal and legal interest in the subject matter of the decision" made by the Commission. And, of course, the failure to give notice to North Haven injuriously affected North Haven's right to be heard before that decision was made by the Commission.[8]
Furthermore, the plaintiff North Haven is also classically aggrieved because the construction of a regional mall would have a substantial impact on traffic and traffic safety on at least that portion of Skiff Street located in North Haven (as well as other streets) due to the narrowness and configuration of the road, the intersection of the streets, and other such matters. Section 13a-99
of the General Statutes places upon North Haven the duty to maintain its highways in a reasonably safe condition; Stamford Dock Realty Corp. v. Stamford, 124 Conn. 341, 344 (1938); it could be compelled to make necessary improvements to alleviate the unsafe conditions: General Statutes 13a-103; and it could be held liable for damages for failure to make the improvements. General Statutes13a-149. Although mere generalizations and fears do not establish aggrievement, Walls v. Planning Zoning Commission (Avon),176 Conn. 475, 478 (1979); it may be established if "there is possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." O'Leary v. McGuinness, 140 Conn. 80, 83 (1953) Hall v. Planning Commission (Ledyard), supra, 445.
The defendants also argue that North Haven has no standing to bring this appeal because there is no physical impact upon the plaintiff. In this regard, they first contend the Commission acted in its legislative capacity by merely authorizing the use and that North Haven would only have standing at the time Homart makes an application for a specific development proposal — presumably when a request for a special permit is made by Homart. This argument fails for at least two reasons.
The right to notice before the amendments are adopted gives to the adjoining town an opportunity to be heard at a crucial time during the decision making process. When considering whether to amend its regulations, the Commission acts in a legislative capacity and has wide discretion. "The discretion of a legislative body, because of its constituted role as a formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function." Arnold Bernhard Co. v. CT Page 1478 Planning and Zoning Commission (Westport), 194 Conn. 152, 164
(1984). Once the regulations are adopted to permit a regional shopping mall, the Commission upon hearing an application to grant a special permit for construction of the mall, acts in an administrative capacity. Maher v. Planning Zoning Commission (Stratford), 154 Conn. 420, 422 (1967). If the application discretion but to approve the special permit. Westport v. Norwalk,167 Conn. 151, 155 (1974). Failure to give North Haven notice of the proceedings when the Commission has the discretion to determine whether the town should or should not have such a regional mall would deprive the municipality of being heard at a meaningful time.
In addition, it was the obvious intent of the legislature to put the adjoining municipality in the same position as a resident of the town wherein the property is situated. This was made clear in the colloquy which occurred at the legislative committee hearing between Representative Blumenthal and Senator Kevin Sullivan, a major sponsor of the Municipal Notification Statutes.[9]
resident of the town has a right to be heard before the Commission adopts an amendment to the regulations and, once again, before the issuance of a special permit which would allow construction of the regional mall.
The second prong of this no-physical-impact argument is that the zoning regulations, as they existed prior to the Amendments, would permit three separate shopping centers, each of 250,000 square feet, on the Site,[10] which collectively constitute a size approximately the same as the number of square feet for a regional mall permitted by the Amendments and which would produce more traffic than the single regional shopping mall. Therefore, the defendants argue, North Haven has no standing to bring the appeal because it is in no worse position than it was before the amendments. The simple answer is that this argument is based upon speculation. There is no evidence before the court that three separate shopping centers are even contemplated by anyone nor is there evidence that they would be economically feasible furthermore, the Controlled Development District 1 (CCD 1), in which zoning district the Site is located, permits, in addition to retail shopping centers, a multitude of uses (some of which are as a matter of right and some subject to obtaining a special permit). Hamden Zoning Regulations, 570 et seq. (1982 as amended). This property could be used for those other purposes which would generate less traffic than a regional mall would attract. On the other hand, if these Amendments become effective it is reasonably probable that such a mall will be proposed and developed.
The plaintiff North Haven is certainly aggrieved within the meaning of the Municipal Notification Statutes and has standing to take this appeal. Accordingly, this court has jurisdiction to entertain its appeal from the Commission. CT Page 1479
(b) Concerning a Project
To be entitled to notice under the Municipal Notification Statutes, North Haven must first prove that the Application concerned a project. Although all parties concede that these Amendments were proposed to accommodate a regional shopping mall, the defendants contend that it did not concern a specific project. They argue that the Application with its proposed amendments did not contain site plans, traffic studies or blueprints, and did not refer to a specific site but merely contained technical amendments applicable to all B-2 and CDD-1 zoning districts throughout Hamden. Homart's Application for change in zoning regulations merely states that the purpose is to "permit existing zoning regulations to be more compatible with the development of a Shopping Center." Nevertheless, there comes a point where courts should not be ignorant as judges of what we know as men and women. (paraphrasing from Justice Felix Frankfurter's opinion in Watts v. Indiana,338 U.S. 49, 52 (1949)). The Application concerned a project within the meaning of the Municipal Notification Statutes.
These regulations were proposed for a specific project — that is, a project which is known as the Hamden Court to be constructed on a 33 acre site located at the corner of Dixwell Avenue and Skiff Street (sometimes referred to as the "Site"). The Site includes the Sears Roebuck and Plasticrete properties, already owned by Homart and the Burger King and Thomas Ford properties for which they have options to purchase.
This was made crystal clear at the hearings by Homart[11], and by the experts who testified on behalf of Homart.[12] To be sure, the Commission[13], the staff of the Commission[14], the town government[15] and the public[16] were aware that the proposed regulations were to enable the Hamden Court to be constructed on the Site. Any question that the amendments zeroed in on this 33 acre Site was put to rest at the October 18, 1988 meeting of the planning section of the Commission when they were considering the proposed amendments and the attorney for Homart made the following presentation: "Atty. Bernard Pellegrino, representing Homart Development Co. and Fusco-Gottlieb, took the podium and introduced himself. He said that present with him are Messrs. Joseph LeDuc and James Farrell from Homart, Edmund Fusco, Jr. and Richard Gottlieb. He said the parcel in question involves 33 acres of land including the Sears Roebuck and Plasticrete properties as well as the RR line, which separates the two properties. He said they have options to buy the Burger King and Bob Thomas Ford properties. Mr. Pellegrino said that the owners want to demolish all the existing structures and construct a modern shopping center. He said the applicants refer to this plan as `Hamden court'; others refer to it as the `Giant Sears Mall'." The voluminous record in these cases CT Page 1480 is replete with references to the Hamden Court to be constructed on the Site.
(c) Traffic
The plaintiff argues that the remaining statutory requirement is fulfilled by proof that "a significant portion of the traffic to the completed project on the site will use streets within the adjoining municipality to enter or exit the site." The adjective significant has its ordinary meaning. General Statutes 1-1; Ganim v. Roberts, 204 Conn. 760, 763 (1987). It simply means that a meaningful portion of the traffic to the site would use the streets of the Town of North Haven. Webster's Third New International Dictionary. It does not mean that a majority of the traffic must use the streets of North Haven. This was made crystal clear when on the floor of the house of representatives House Bill 7222 (which was enacted as the Municipal Notification Statutes) was amended by substituting "significant" for the word "major" as reported out of committee. 30 H.R. Proc. Pt. 16, 1987 Sess., p. 6027.
All the traffic studies in the administrative record and those introduced into evidence before the court, whether submitted by the plaintiff or the defendants, clearly indicate that a meaningful portion of the traffic generated from the regional mall would use streets of North Haven including the North Haven portion of Skiff Street. The Landino report[17] (plaintiffs' expert) projects 30%, the Purcell Associates report[18] (Homart's expert) indicates about 45% and the Gern report (Homart's expert)[19] would not dispute Purcell's conclusions except instead of estimating 15% of the mall traffic would use North Haven's portion of Skiff Street he would estimate 10%.[20]
(d) Jurisdiction of the Commission
It is clear that the plaintiff North Haven has sustained its burden of proving that the Application "concerned a project," that significant portion of the traffic to the completed project will be streets within North Haven, the adjoining municipality, and that the Hamden Planning Zoning Commission failed to give North Haven the notice required under the Municipal Notification Statutes.
The failure to furnish the required notice to the town of North Haven went further then merely not giving notice to an indispensable party; Fong v. Planning Zoning Board of Appeals (Greenwich), 212 Conn. 628 (1989); or to a "statutorily mandated, necessary party." Simko v. Zoning Board of Appeals (Fairfield),206 Conn. 374, 376 (1988); Andrew Ansaldi Co. v. Planning Zoning Commission (Manchester), 207 Conn. 67, 70 (1988): all of which CT Page 1481 would also constitute jurisdictional defects. In the present case the failure to give the required notice is a defect of a heightened level; it clearly involves the Commission's subject matter jurisdiction. The plain language of the Municipal Notification Statutes provides that, if under their provisions a town is entitled to notice, "[n]o hearing may be conducted on any application . . . unless the adjoining municipality has received the notice required. . . ." (emphasis supplied) General Statutes8-3h and 8-26f. "Where the meaning of a statute is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it. Its unequivocal meaning is not subject to modification by way of construction." Connecticut State Board of Labor Relations v. Board of Education (West Hartford), 177 Conn. 68,73 (1979).
The failure to give the required notice under the Municipal notification Statutes was a prerequisite to any valid and effective amendment of the zoning regulations. First Church of Christ, Scientist v. Friendly Ice Cream, 161 Conn. 223, 227 (1971) (failure to give notice within specified period); Maher v. Town Planning 
Zoning Commission (Stratford), supra, 425 (failure to give notice required by the regulations); Hutchinson v. Board of Zoning Appeals (Stratford), 138 Conn. 247, 250-51 (1951) (failure to comply with regulations); Bombero v. Planning Zoning Commission (Monroe),17 Conn. App. 150, 154-55 (1988) (failure to give notice by filing proposed boundary change with town clerk). See Cavallaro v. Durham,190 Conn. 746, 747 (1983). "It is clear that an administrative body must act strictly within its statutory authority, within constitutional limitations and in a lawful manner. It cannot modify, abridge or otherwise change the statutory provisions under which it acquires authority unless the statutes expressly grant that power. When authority to commence a proceeding is conferred by statute and the manner of proceeding is prescribed, the prescribed procedure is mandatory and must be strictly complied with when a matter of substance is involved." (citations omitted). Waterbury v. Commission on Human Rights Opportunities, 160 Conn. 226,230-31 (1971).
In Edelson v. Zoning Commission (Berlin), 2 Conn. App. 595
(1984), the zoning commission failed to give, as required by General Statute 8-3b, notice of a proposed amendment of the zoning regulations to the regional planning agency. Although 8-3b does not specifically prohibit the commission from holding a hearing if notice is not given, as in the present case, the appellate court in Edelson held that "compliance was a prerequisite to any valid and effective action by the commission." Id. 599.
Although as previously indicated it is not necessary and would be improper to resort to statutory construction when the language, as in the present case, is plain and unambiguous: CT Page 1482 Quinnipiac Council, Boy Scouts of America, Inc. v. Comm. on Human Rights Opportunities, 204 Conn. 287, 294 (1987); the legislative history makes it absolutely certain that the legislature intended that the notice provisions are mandatory and failure to give it deprives the Commission of jurisdiction over the subject matter. For example, see the comments of Representative Alex Knapp, Conn. Joint Standing Committee Hearings, Planning and Development, Pt. 3, 1987, Sess., p. 709-10.
Indeed, the dissent in Ansaldi, 207 Conn. at 70-76, puts this case in its proper perspective. Under the Municipal Notification Statutes, unlike the Simko and Ansaldi situations, there are "textual foundation" and "supporting legislative history" to conclude that the notice provisions involve subject matter jurisdiction. 207 Conn. at 71 (Shea, J. dissenting).
The defendants, however, argue that North Haven waived this jurisdictional issue because the town had actual notice of the proposal to amend the regulations and that an agency of the Town of forth Haven participated in the hearing by sending a letter of protest. Surely, lack of personal notice may be waived. Palo v. Rogers, 116 Conn. 601, 605 (1933). Nevertheless, as the court previously pointed out, the requirements of these statutes go further than merely requiring notification to the adjoining town, but they provide that the commission is prohibited from conducting a hearing. Since this involves subject matter jurisdiction, it cannot be waived. "[J]urisdiction of the subject matter is a question of law and cannot be waived or conferred by consent . . . ." Cahill v. Board of Education (Stamford), 198 Conn. 229, 238
(1988). This requirement of subject matter jurisdiction has full application to administrative agencies. Castro v. Viera, 207 Conn. 420,428 (1988); Andrew Ansaldi Co. v. Planning Zoning Commission (Manchester), supra 28; 2 Am. Jur.2d, Administrative Law 331.
Even if the jurisdictional requirements of notice could be waived, there was no waiver by North Haven. Mere knowledge through the public media of the proceedings by the first selectperson or the town attorney is insufficient. In the case of A B Auto Salvage, Inc. v. Zoning Board of Appeals (East Hartford), 189 Conn. 573
(1983), the court held that actual knowledge of a court appellate proceeding would not bind a party under either equitable principles or waiver. "Relying on the rationale underlying the application of the clean hands doctrine, to promote public policy and the integrity of the courts, the defendants assert that by its conduct the plaintiff has abused the integrity of the judicial system. We do not agree. The plaintiff has done nothing more than pursue its legal rights. Irrespective of its knowledge of the initial appeal, the plaintiff was under no duty to enter therein as a party defendant. To impose such a duty could create shocking situations and disturb long-established principles. Such an CT Page 1483 argument, so contrary to fundamental concepts of due process, can be justified neither in reason nor on authority" (citations omitted) Id.: 578-79 (quoting Morris v. Gressette, 425 F. Sup. 335
(D.S.C. 1976), aff'd. 432 U.S. 491 (1977))
Furthermore, the sending of a letter of protest about the amendments to the Commission by the chairperson of the North Haven Conservation Commission would also not constitute a waiver. The North Haven Conservation Commission was not authorized by law to represent the town before the Commission: North Haven Charter, 21-1; General Statute 7-131a(b) nor was there any evidence that North Haven in fact granted such authority to the Conservation Commission.
The defendants reliance on Sachem's Head Association v. Lufkin, 168 Conn. 365 (1975) and Schwartz v. Hamden, 168 Conn. 8
(1975) to support their claim of waiver is misplaced for the following reasons. First, in both Sachem's Head and Schwartz there was actual participation in the hearings by those who were entitled to notice but did not receive the same. In the present case, although it was clear that the selectperson and town counsel knew of the proposed amendments, the town of North Haven did not participate in hearings before the Commission. Second, and most important, the statutes in the Sachem's Head case (formerly 25-7d now 22a-361 and Schwartz case (8-29) merely required that notice be given making them necessary parties. In the present case, not only was the Commission required to give notice to North Haven under the Municipal Notification Statutes, making it a necessary party, but these statutes elevated the notice to the equivalence of subject matter jurisdiction which as previously indicated cannot be waived.
The defendants argue that to send notice in cases such as this would place an undue burden on the town. Indeed, Shirley Gonzales, the town planner, who is the de facto clerk of the Commission, complained about the burden. Court transcript p. 106 (Jan. 26, 1990). Of course, the short answer is that the legislature mandated this notice. Nevertheless, even if the court could consider this claim, it has no factual basis. There are a total of six towns adjoining Hamden and even if a notice was sent to each of these towns in every instance, it would be a small task and involve an infinitesimal cost. The town planner was fully aware of the Municipal Notification Statutes and made a calculated decision, for whatever reason, furnish notice which has resulted in this very costly litigation. In fact, even if there were no Municipal Notification Statutes, it is clear that for the Commission to have made an informed decision in this matter at least the Town of North Haven's input was essential because of the magnitude of the project and the implications it has on the County of New Haven. The members of the Commission cannot put blinders on CT Page 1484 that would prevent them from seeing beyond the town lines of Hamden. The Municipal Notifications Statutes make relevant the impact their decisions have on adjoining towns such as North Haven.
Furthermore, it is clear that the legislature intended that failure to give the required notice would result in voiding any action on the part of the Commission. Representative Blumenthal on the floor of the House responded as follows to an inquiry: "[I]t is the intent . . . of this Chamber in passing this legislation that Clerks ought to exercise a great deal of caution, perhaps an excess of caution, . . . [and] give the benefit of the doubt whenever there is any question that there may be an impact that would fit the requirements of this bill. . . ." 30 H.R. Proc. Pt. 16, 1987 Sess. p. 6032. And shortly thereafter, he commented: "[A]ny locality in order to be safe rather than sorry, would simply do this as a matter of routine whenever there were any question about whether or not there were an impact that fit the requirements of the statute. The purpose of this legislation is to avoid the kind of very hostile and unproductive fight that eventually emerged between the Towns of West Hartford and Bloomfield. It does so in a way that is measured and balanced. It would not impose any more than a minimal cost on any locality. . . ." Id. p. 6038.
The failure to give North Haven notice pursuant to the provisions of the Mandatory Notification Statutes deprived the Commission of jurisdiction to hear the Application of Homart and rendered its decision to amend the regulations a nullity.
Protect's Appeal
The plaintiff Protect appeals from the decision of the Commission granting the Amendments to the zoning regulations on the grounds that (1) they were not in accordance with the comprehensive plan, (2) the Amendments were not designed to lessen congestion in the streets, (3) they were inconsistent with the obligation to promote health and general welfare, and (4) the Commission acted in procedural error. The court in this section of the decision incorporates all of its findings, statements of the law and other matters set forth in North Haven's appeal to the extent they are applicable to Protect's appeal.
(a) Jurisdiction of Court
The Protect-plaintiffs must also prove that they are either "statutorily" or "classically" aggrieved[21] for this court to have jurisdiction to hear their appeals.[22] The defendants do no contest and the court finds that the plaintiff Ellen Nathanson owns land within the zones affected by these amendments and she is therefore, statutorily aggrieved. General Statutes 8-8 (a). CT Page 1485
The remaining individuals, all of whom live within the vicinity of the Site, would be adversely affected by an increase in traffic as a result of the operation of a regional shopping mall. This traffic congestion that they would experience is more than sufficient to support their classical aggrievement. Gregorio v. Zoning Board of Appeals (Windsor), 155 Conn. 422, 426 (1967). Although the plaintiffs need only prove a possibility of such increased traffic; Huck v. Inland Wetlands and Watercourses Agency (Greenwich), 203 Conn. 525, 530 (1987); they have established this with reasonable certainty. In addition some of these individual plaintiffs bolstered their proof of aggrievement beyond the increase in traffic.[23]
The defendants, however, claim that these individual plaintiffs have not met the classical test because they had failed to show "that others in the surrounding areas would not experience similar effects if the mall was built." Surely, just because the traffic congestion would have the same impact on the immediate neighborhood does not dilute the plaintiffs' aggrievement. The test is not the neighborhood which would foreclose aggrievement, but rather the entire community which is governed by the zoning regulations. See, Krejpcio v. Zoning Board of Appeals (Hartford), 152 Conn. 657, 660
(1965); Tyler v. Board of Zoning Appeals (Woodbridge), 145 Conn. 655,662 (1958). Any standard which would require the showing that they were affected differently from their immediate neighbors would be unreasonably restrictive and make it impossible for persons to redress real harm caused by the action of the Commission.
The court finds that Protect Hamden/North Haven from Excessive Traffic and Pollution, Inc., Spring Glen Parent Teacher Association and Spring Glen Civic Association, Inc., the nonprofit corporate plaintiffs, are also aggrieved. Connecticut has adopted the federal standard for determining representational standing. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 304 (1987) (quoting Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 343
(1977)).
The members of the corporations, if they were individual plaintiffs in this action, would, among other things, be aggrieved as a result of the increased traffic congestion since they lived within the immediate area of the Site. The interest that these nonprofit corporations seek to protect are germane to their purposes.[24] Finally, the relief requested by these nonprofit corporate plaintiffs does not require the members' individual CT Page 1486 participation in this appeal.
(b) Court's Standard of Review
The Commission, when amending its regulations, acts in a quasi-legislative capacity. The Supreme Court of Connecticut has held "on many occasions that the courts cannot substitute their judgment for the wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed legislative powers. `The courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution' Cameo Park Holmes, Inc. v. Planning and Zoning Commission,150 Conn. 672, 677 . . . [1963]. Courts, therefore, must not disturb the decision of a zoning commission unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally." (citations omitted in part). First Hartford Realty, Corporation v. Plan and Zoning Commission (Bloomfield), 165 Conn. 533,540-41 (1973); Malafronte v. Planning and Zoning Board (Milford), 155 Conn. 205, 209 (1967).
This liberal discretion, however, is not an absolute discretion. The legislature has not delegated to the zoning commission carte blanche authority to act in a manner that is not consistent with the enabling statutes. See Mills v. Town Plan 
Zoning Commission (Windsor), 144 Conn. 493, 498-99 (1957). In order to effectively amend the zoning regulations the Commission must meet the requirements of General Statute 8-2 which provides in part the following: "Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers: to promote health and general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements." Therefore, the "test of the action of the commission [in amending its regulations] is twofold: (1) The zone change must be in accord with a comprehensive plan, and (2) it must be reasonably related to the normal police power purposes enumerated in 8-2." (citations omitted). First Hartford Realty Corporation v. Planning and Zoning Commission (Bloomfield), supra 541.
(c) Comprehensive Plan
Hamden has not adopted a comprehensive plan, although it has promulgated a plan of development pursuant to 8-23 of the General Statutes. Under these circumstances, the Supreme Court has held that the comprehensive plan referred to in 8-2 is to be found in CT Page 1487 the zoning regulations themselves (including the zoning map); Sheridan v. Planning Board (Stamford), 159 Conn. 1, 18 (1969); and the town's plan of development prepared and adopted pursuant to 8-23
cannot be substituted for the comprehensive plan. Lathrop v. Planning Zoning Commission (Trumbull), 164 Conn. 215, 223
(1973).
Accordingly, the Commission did not abuse its wide discretion when, acting in its legislative capacity, it determined that a regional shopping mall of 784,000 square feet was within Hamden's presumed comprehensive zoning plan for a site which already permitted three separate shopping centers each consisting of 250,000 square feet. Although it could be argued that the character of a shopping mall of that magnitude under one roof is different than three separate shopping centers collectively of equal size, the determination made by the Commission was well within its legislative discretion since this issue was never raised before it. Therefore, the court finds that this requirement for amending the regulations has been met.
This case, however, clearly demonstrates the confusion and injustice which could result from the rule that in the absence of a formal comprehensive zoning plan the court must look solely to the regulations themselves. The court is certain that the average person who purchased or rented a home in the vicinity of the Site before this project was proposed would never have envisioned they would some day be confronted with a 784,000 square foot regional shopping mall occupying 33 acres of land with its attendant traffic, pollution and safety hazards. "Those who buy property in a zoned district have the right to expect that the classification made in the ordinance will not be changed unless a change is required for the public good." Damick v. Planning Zoning Commission (Southington), 158 Conn. 78, 84 (1969).
If this court, however, in the absence of a formally adopted comprehensive plan of zoning, was able to take into account the town plan of development as the comprehensive plan, it would have come to a different conclusion about the Amendments meeting this requirement. Being able to consider the plan of development under these circumstances would seem logical, practical and reasonable and which, in the absence of any other plan, should be presumed to reflect the future development as envisioned by the town. Equally important, citizens would not have been misled.
Indeed, a review of Hamden's Plan of Development of 1981[25]
discloses, for example, recommendations that the existing shopping centers be upgraded, but it did not recommend a regional shopping mall; that the use of land for commerce, industry, and the professions "should not be permitted to infringe upon, or detract from, the character of residential areas"; and that in determining CT Page 1488 permitted uses of land in the aquifer protection zone, in which the Site lies, higher traffic generation should be discouraged. Furthermore, the Plan provides that "[a]ll zoning change approvals should be consistent with the Town's Plan of Development."
Professor Terry J. Tondro points out that by resorting to the zoning regulations themselves, in the absence of comprehensive plan, "seems to render the requirement a nullity due to circular reasoning: zoning decisions are tested against a comprehensive plan which turns out in most cases to be the document containing the questioned decisions." T. Tondro, Connecticut Land Use Regulations, p. 24 (1979). Nevertheless, the court is bound by cases such as Lathrop and must consider the zoning regulations as they existed prior to the Amendments in question in order to measure whether the Amendments were within the town's comprehensive zoning plan. (d) Police Power Purposes
In determining whether the Commission exceeded its discretion, the Amendments must meet the second prong of the test — that is, they must be reasonably related to one or more of the state policy power purposes as set forth in 8-2. Builders Service Corporation v. Planning Zoning Commission (East Hampton), 208 Conn. 267, 284
(1988) (rejecting the standard of review that it must substantially advance legitimate state interests.) It is apparent that the majority of the Commission who voted in favor of the Amendments not only failed to state on the record the police power purpose or purposes they relied upon to support their decision as required by statute,[26] but they were under the mistaken belief that it was not their concern at that time.
Commissioner Carl Secola, Jr. summarized for the majority of the Commission their reasons for the adoption of the Amendments when the commissioners were requested by town counsel Steven Rolnick to state them for the record. The minutes of the decisional meeting indicated through Mr. Secola that the majority of the commissioners voted for the Amendments because it was in accordance with the comprehensive town plan and took no other factor into consideration. "Mr. Secola said he voted his conscience [sic] and said the amendments fall within the Town Plan; more specifically, it addresses the interrogatories and the response from the Town Planner which should be made a part of the record He said he felt this was not a departure from the Town Plan. He said tonight the Commission was supposed to limit itself to the zone changes only, which are not a departure from the Town Plan." (emphasis supplied) Record no. 120. The Commission's error is not that they merely failed to make necessary findings, but the record patently shows that they acted under the mistaken belief that these police power purposes enumerated in 8-2 were not appropriately before them when determining whether to amend the regulations. CT Page 1489 This must be distinguished from cases such as Stankiewicz v. Zoning Board of Appeals (Montville), 211 Conn. 76 (1989) which summarily affirmed the appellate court's holding that "[i]f the board fails to give the reasons for its actions, or if its reasons are inadequate, the trial court must search the record to determine whether a basis exists for the action taken." (emphasis supplied);15 Conn. App. 729, 739 (1988).[27]
Once the record patently demonstrates that the Commission failed to consider a requirement of the statute because of a mistake of law, the decision of the Commission must be overturned. Cf., Dubiel v. Zoning Board of Appeals (East Hartford), 147 Conn. 517
(1960); F. Cooper, 2 State Administrative Law, p. 476 (1965). Under these circumstances, if the court was to search the record to determine if there was sufficient evidence to support one of the purposes enumerated in 8-2, this court would be deciding facts which the Commission, in exercising its legislative function, may not have found. "The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency." Burnham v. Planning Zoning Commission (South Windsor), 189 Conn. 261, 265 (1983). This court has "no authorization to weigh the evidence for itself and determine the issues of fact involved." Marino v. Zoning Board of Appeals (Watertown), 22 Conn. App. 606, 610 (1990).
Even if this court were to search the record under cases such as Stankiewicz, the decision of the Commission would not meet the requirements of 8-2 that the Amendments must be reasonably related to one or more of the state police power purposes. It is clear, that in order to meet the requirements only one such reason is necessary. First Hartford Realty Corporation v. Plan and Zoning Commission (Bloomfield), supra at 543. The only two purposes enumerated in 8-2 which could possibly apply to these Amendments are that the regulations are "designed to lessen congestion in the streets and to promote the health and general welfare." There is no substantial evidence which would allow the Commission to find that either of these purposes are served by the Amendments. Huck v. Inland Wetlands Watercourses Agency (Greenwich), supra at 40-42 (substantial evidence rule).
(i) Lessen Congestion in Streets
All the evidence in the record pertaining to traffic congestion indicates that a regional shopping mall consisting of 784,000 square feet would generate a substantial increase in traffic congestion. The following reports submitted by the opponents to the Amendments and contained in the record clearly establishes this: J. G. Bubaris, P.E., P.C., "Traffic Impact Review of the Hamden Court Mall, Hamden, Connecticut as it Relates to Proposed Amendments to the Zoning Regulations" dated October 7, CT Page 1490 1988 (Record no. 45); Barakos-Landino, Inc., "Traffic Impacts of the Proposed Hamden Mall on North Haven," dated August 19, 1988 (Record no. 105). In addition, citizens testified about the present problems regarding traffic without the increase which, would result from a shopping mall of 784,000 square feet. Indeed, present congestion at the intersection of Whitney and Dixwell which will be affected by the mall was described as being "frequently severely congested" in the Hamden Plan of Development (1981). Record no. 1.
Even though the Commission could have rejected this evidence; Manor Development Corp. v. Conservation Commission (Simsbury),180 Conn. 692, 697 (1980); there was, of course, no evidence that congestion would be lessened in the streets. Homart's own traffic experts concede that there will be a substantial increase of traffic and congestion as a result of a regional shopping mall which will require substantial modifications and improvements of intersections and streets to accommodate that traffic. Homart's expert Mr. Richard Gern, Senior Vice-President of Barton Ashlin, conceded that substantial improvements would be required to be made by local, state and federal governments in order to accommodate the traffic flow for a regional shopping mall at the Site of Dixwell Avenue and Skiff Streets. Mr. Gern testified as follows: "This is a sizable package of improvements. You all know that in total it is in excess of $10 million that will be spent for the developer [Homart], between Federal and State funds." (emphasis supplied) Commission transcript, p. 107 (Dec. 8, 1988).
Notwithstanding the mistaken belief by the majority that they should only concern themselves with whether the Amendments were in accordance with the comprehensive plan, increased traffic congestion was of concern to every member of the Commission. For example, the following comments were made by Commissioner Carl Secola, Jr.: "I'm very concerned about the traffic. The traffic situation in this town now on Dixwell, Whitney and Skiff is abysmal. It's terrible. It's going to get worse." Record no. 5.[28]
The Commission's decision could not be supported even if there was evidence that traffic congestion would be lessened upon completion of the ten million dollars of modifications and improvements to the streets by government agencies. Voting for these Amendments on the assumption that these substantial modifications and improvements would be made would violate the "probability of other agency action rule." T. Tondro, supra p. 43. "[A] change of zone which is dependent for its proper functioning on action by other agencies and over which the zoning commission has no control cannot be sustained unless, at the very least . . ., the necessary action appears to be a probability." CT Page 1491 Faubel v. Zoning Commission (Ridgefield), 154 Conn. 202, 211
(1966). of course, the Commission does not have control over the local, federal or state governments. Although there was some evidence that about 25% of these funds were committed, there is not a scintilla of evidence to indicate that these governments would provide the additional $7.5 million to make the necessary modifications and improvements.
There is good reason for this rule. Professor Tondro in Connecticut Land Use Regulation points out this reason in the case of Westfarms Mall in Farmington and West Hartford. The problems associate with Hamden Court, if constructed, could very well mirror the Westfarms Mall's problems.
 The court's objection to amendments under these circumstances is sound: if anything the rule does not go far enough. What happens is that a developer seeking a zone change tells the commission that any traffic problems will be taken care of by traffic improvements or new roads. The zoning commission then grants the rezoning, denying that there will be any traffic congestion because of official actions that will take place.
 The error of such an approach is well illustrated by one of the cases that found the rule was not violated. In Stiles v. Town Council, [159 Conn. 212 (1970)] the requested rezoning permitted the construction of an 80 acre regional shopping center (Westfarms Mall). To neighbors' charges that the existing roads could not handle the traffic generated by such a development, the West Hartford Town Council (acting as the zoning commission under West Hartford's charter) replied that the site was at the juncture of Interstate Highways 84 and 291.
 Interstate 84 was then completed, although I-291 was still at the mapping stage. Since these roads could handle the traffic, in the Council's opinion, the neighbors' traffic congestion argument was without force. The court upheld that conclusion, finding that the other agency action, DOTs construction of I-201, was "probable." Of course, it has in fact CT Page 1492 never been completed and one of its two sections that would have connected to I-84 has even been removed from the list of approved interstate highways in Connecticut. There also has been substantial traffic congestion at the Mall, requiring the state and neighboring towns to make expensive highway modifications.
T. Tondro, supra p. 44.
It is absolutely clear that the record in this case would not support the Amendments on the basis that it would lessen congestion on the streets. On the contrary, the overwhelming evidence in the record indicates that traffic congestion on the streets would be substantially increased; without the improvements it would result in chaos and with the improvements it may be tolerable.
(ii) Promote Health and General Welfare
The remaining police powers which could possibly be applicable to the regional shopping mall would be to promote the health and general welfare. There is no evidence or any claim by the Commission or the other defendants that the adoption of the Amendments would promote the health and general welfare of the public. Indeed, the record is replete with substantial evidence that a regional shopping mall would cause increased traffic, safety, air pollution, health and refuse problems, and an increase of insurance premiums, and reduce property values. There was an outpouring of concern from the public about traffic and safety. Typical was a letter of protest from St. Rita Elementary and Middle School Board of Education which detailed these concerns and summarized them as follows: "The proposed mall will place the welfare, health and safety of our students, staff and parents in jeopardy." (Record unnumbered) "A regulation that may have some beneficial effect will not, ipso facto, be considered valid and consonant with the general welfare but, rather, inquiry must also be directed toward whatever detrimental effects a particular regulation has. A regulation that has some relationship to promoting the general welfare or some subset of that concept, such as public health, safety, property values or any of the declared purposes set out in the enabling act in 8-2, would be valid if it does not at the same time promote or generate results that are contrary to the general welfare." Builders Service Corporation v. Planning Zoning Commission (East Hampton), supra at 283.
It is clear that there is no evidence and certainly no substantial evidence that these Amendments are reasonably related CT Page 1493 to any of the police powers enumerated in 8-2 and thus the appeal must be sustained on this basis.
(e) Due Process of Law
Although the plaintiffs are entitled to have their appeals sustained on the merits, it is in the public interest that this court also review their claims that they were denied due process at the third and final public hearing on December 8, 1988. The plaintiffs are entitled to due process of law under the State Constitution in the conduct of this hearing by the Commission. Conn. Constit., article first, 10[29].
Generally, "[d]ue process of law requires that the parties involved have an opportunity to know the facts on which the commission is asked to act, to cross-examine witnesses and to offer rebuttal evidence. The commission could not properly consider additional evidence submitted by an applicant after public hearing without providing the necessary safeguards guaranteed to the opponents of the application and to the public. `This means a fair opportunity to cross-examine witnesses, to inspect documents presented and to offer evidence in explanation or rebuttal. Not to do so would deny those opposing the application the right to be fully apprised of the facts on which the board is asked to act.'" Pizzola v. Planning Zoning Commission (Plainville), 167 Conn. 202, 207 (1974) (quoting Wasicki v. Zoning Board (Stamford), 163 Conn. 166, 173 (1972)); T. P. Byrne, Planning and Zoning In Connecticut, p. 125-26 (3rd ed. 1982).
The Commission adopted the following procedure for the public hearings. First, Homart, the applicants, made their presentation; second, the public commented for and against; third, town officers commented; and fourth, Homart's reply. During the Homart reply, which occurred on December 8, 1988, substantial evidence was introduced regarding traffic which the regional shopping mall would generate and how these problems would be solved by highway modifications and improvements. No evidence as to traffic was submitted by Homart in their initial presentation made on November 10, 1988.
Traffic must be put in its proper perspective. If the Commission considered the second prong of the test which must be met in order to amend the regulations, the public purpose test, traffic was an important element in the only two police power purposes enumerated in 8-2 which could support the Amendments — that is, lessen congestion in the streets and promote health and the general welfare.
At the December 8, 1988 public hearing, Richard Gern of CT Page 1494 Barton Ashlin Traffic Consultants, presented evidence on traffic and the modifications and improvements necessary to accommodate the increase in traffic. Although he did not testify that the state traffic commission had approved the regional shopping mall, he clearly left the impression that all the traffic problems had been resolved and the necessary highway modifications and improvements costing $10,000,000.00 would be made.[30] This was not the case.
The procedure adopted by the Commission, which would not allow Protect and the other plaintiffs[31] that were at the hearing to at least rebut this testimony by making clear that the state traffic commission had not approved the regional shopping mall, that traffic problems had not been resolved and that the modifications and improvements were not a certainty, was important evidence. The failure to give them the opportunity to point that out and present other evidence to the Commission deprived them of their constitutional right to due process of law.
The defendants, however, claim that the plaintiffs waived this right by not objecting at the first public hearing when the procedure which the Commission followed was announced by the chairperson and by not objecting at the third public hearing on December 8, 1988 when Homart presented the traffic evidence. Of course, the right to due process can be waived. See Welch v. Zoning Board of Appeals (North Branford), 158 Conn. 208, 213
(1969).
Protect's conduct did not constitute a waiver. "Waiver is the intentional relinquishment or abandonment of a known right or privilege." A B Auto Salvage, Inc. v. Zoning Board of Appeals (East Hartford), 189 Conn. 573, 579 (1983). Counsel for Protect did not know that Homart would submit traffic and related evidence until the night it was presented on December 8, 1988. During the intermission of that hearing counsel for Protect requested town counsel that he be given an opportunity to rebut Homart's evidence. Although town counsel Rolnick responded that the Commission's standard procedure was not to allow rebuttal after the applicant had given its response, he indicated he would advise the Commission to allow the public (including Protect) the opportunity for rebuttal if Bernard A. Pellegrino, the attorney for Homart, would agree. Mr. Pellegrino would not give his consent. Town counsel on behalf of the Commission refused to, allow Protect's rebuttal but did agree to put Protect's request and objection on the record. Town counsel, however, failed to do so. At the conclusion of the evidence, the attorney for Protect attempted to be recognized by the chairperson, in order to put his objections on the record when he realized that town counsel failed to do so, but he was not recognized and the hearing was concluded. CT Page 1495
 III
In sum, in case No. 28 06 44, the appeal of the plaintiff Town of North Haven and in case No. 28 09 08, the appeals of Protect Hamden/North Haven From Excessive Traffic and Pollution, Inc., Spring Glen Parent Teacher Association, Spring Glen Civic Association, Inc. and the individual plaintiffs — Daniel Altman by Ann Altman, ppa, Dori Baker, Peggy Gallup, Charles Guthrie, Karen Longo-Baldwin, Robert Lynn, Mary E. McKeon, John J. McKeon, Ellen Nathanson, Richard Petrelli, Peter Rae, Margaret Rae, Catherine A. Smith, David M. Smith, Maura M. Stavovy and Thomas A. Stavovy Marsha A. Walsh, Elizabeth Workman, and Elizabeth Youngerman — are sustained.
ROBERT I. BERDON, JUDGE.
FOOTNOTES